**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN MOUBARAK, Derivatively on Behalf of FARADAY FUTURE INTELLIGENT ELECTRIC INC. f/k/a PROPERTY SOLUTIONS ACQUISITION CORP., <br><br> Plaintiff, <br><br> v. <br><br> CARSTEN BREITFELD, ZVI GLASMAN, WALTER J. MCBRIDE, JORDAN VOGEL, AARON FELDMAN, YUETING JIA, EDUARDO ABUSH, DAVID AMSTERDAM, MATTHIAS AYDT, CHAOYING DENG, EDWIN GOH, BRIAN KROLICKI, LEE LIU, AYI SAVAR, SUSAN SWENSON, SCOTT VOGEL, JIAWEI WANG, and QING YE, <br><br> Defendants, <br><br> FARADAY FUTURE INTELLIGENT ELECTRIC INC. f/k/a PROPERTY SOLUTIONS ACQUISITION CORP., <br><br> Nominal Defendant. | CASE NO.: <br><br><br> DEMAND FOR JURY TRIAL |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff John Moubarak ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Nominal Defendant Faraday Future Intelligent Electric Inc. (f/k/a Property Solutions Acquisition Corp) ("Faraday" or the "Company"), submits this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and

analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Faraday with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This shareholder derivative action seeks to remedy wrongdoing committed from January 28, 2021 through the present (the "Relevant Period"), by Faraday's directors and officers and by the directors or officers of FF Intelligent Mobility Global Holdings Ltd. ("Legacy FF").

2.     Legacy FF, based in California, was founded in 2014 for the purpose of designing and engineering electric vehicles.

3.     Founded in February 2020 as a special purpose acquisition company ("SPAC"), or blank check company, Property Solutions Acquisition Corp. ("PSAC") had its initial public offering ("IPO") on July 24, 2020. Through the IPO and a simultaneous private placement, PSAC raised gross proceeds of nearly $230 million.

4.     In late January 2021, PSAC and Legacy FF issued a press release announcing an agreement to consummate a business combination (the "Merger"). The terms of the agreement provided that a subsidiary of PSAC would merge with Legacy FF, the latter of which would survive the merger as PSAC's wholly-owned subsidiary.

5.     On June 24, 2021, PSAC filed a document with the SEC consisting of a proxy statement, consent solicitation statement, and a prospectus (the "Proxy Statement"). In the Proxy Statement, the PSAC Board of Directors (the "Board") solicited the approval of PSAC stockholders for the Merger and the board of directors of Legacy FF solicited the approval of

2

Legacy FF shareholders for the Merger.

6.     The companies' shareholders approved the Merger, which was consummated on July 21, 2021. The resulting entity—*i.e.*, the Company—changed its name to Faraday Future Intelligent Electric Inc.

7.     On November 15, 2021, the Company announced that it was unable to timely file its quarterly report on Form 10-Q for the fiscal period ended September 30, 2021.  The Company also announced that its Board had formed a special committee of independent directors (the "Special Committee") to "review allegations of inaccurate disclosures."

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f) and Section 14(a) of the Exchange Act.

9.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the district courts permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because the Company is incorporated in Delaware.

## PARTIES

11.     Plaintiff is a current shareholder of Faraday.  Plaintiff purchased his stock on January 26, 2021 and still holds it.

12.     **Defendant Faraday** is a Delaware corporation with its principal executive offices at 18455 S. Figueroa Street, Gardena, CA 90248.

13.     **Defendant Carsten Breitfeld** ("Breitfeld") served as Legacy FF's Chief Executive Officer ("CEO") from September 2019 until the Merger and continued in that role at the Company after the consummation of the Merger.  Defendant Breitfeld reports directly to Defendant Susan Swenson, the Company's Executive Chairperson.  In addition, Defendant Breitfeld was a member of Legacy FF's board of directors, and he is currently a member of the post-Merger Board.

14.     **Defendant Zvi Glasman** ("Glasman") served as Legacy FF's Chief Financial Officer ("CFO") from December 2020 until the Merger, and he continued serving as CFO at the Company until October 27, 2021.

15.     **Defendant Walter J. McBride** ("McBride") was the Company's CFO on November 1, 2021 through March 1, 2022.

16.     **Defendant J. Vogel** ("Vogel") served as PSAC's Chairman and Co-CEO from its inception until the Merger, when he joined the Company's Board.  Defendant Vogel is a member of the Compensation Committee.  In addition, Defendant Vogel is a managing member of Property Solutions Acquisition Sponsor, LLC ("Sponsor").

17.     **Defendant Aaron Feldman** ("Feldman") served as PSAC's Co-CEO and Treasurer from its inception.  In addition, Defendant Feldman is a managing member of Sponsor.

18.     **Defendant Yueting Jia** ("Jia") is Legacy FF's Founder.  Defendant Jia served as Legacy FF's Chief Product and User Ecosystem Officer from September 2019 until the Merger and continued in that role at the Company following the Merger.  Defendant Jia is the uncle of Defendant Jiawei Wang.

19.     **Defendant Eduardo Abush** ("Bush") served as a director of PSAC from February

2020 until the Merger.  Defendant Abush is a member of Sponsor.

20.     **Defendant David Amsterdam** ("Amsterdam") served as a director of PSAC from February 2020 until the Merger.  Defendant Amsterdam is a member of Sponsor.

21.     **Defendant Matthias Aydt** ("Aydt") served as Legacy FF's Senior Vice President of Business Development and Product Definition from November 2019 until the Merger and has continued to serve in that role at the Company following the Merger.  Defendant Aydt served also as a director of Legacy FF prior to the Merger and is currently a member of the Company's Board.

22.     **Defendant Chaoying Deng** ("Deng") is currently the Company's Chief of Staff, Vice President of Corporate Operations, Vice President of Government Affairs and Administration.

23.     **Defendant Edwin Goh** ("Goh") has served as a Company director since the Merger. In addition, he serves as Chair of the Finance and Investments Committee and as a member of the Audit Committee.

24.     **Defendant Brian Krolicki** ("Krolicki") served on Legacy FF's board of directors prior to the Merger and was appointed to the Board of the Company upon the consummation of the Merger.  Defendant Krolicki served as Chairman of the Board and as Chair of the Nominating and Corporate Governance Committee until the conclusion of the Special Committee's investigation, following which he stepped down from those roles and became a member of the Audit and Compensation Committees of the Board.

25.     **Defendant Lee Liu** ("Liu") was appointed to the Company's Board upon the consummation of the Merger.  Defendant Liu also serves as Chair of the Compensation Committee and as a member of the Nominating and Corporate Governance Committee.

26.     **Defendant Ayi Savar** ("Savar") served as a director on PSAC's Board from

February 2020 until the Merger.  Defendant Savar is a member of Sponsor.

27.    **Defendant Susan Swenson** ("Swenson") was appointed to the Company's Board upon the consummation of the Merger and began serving as Chair of the Audit Committee and as a member of the Compensation Committee.   Following the Special Committee's investigation and findings, Defendant Swenson stepped down from the Audit and Compensation Committees and was appointed to the Company's newly created position of Executive Chairperson.  As Executive Chairperson of the Company, Defendant Swenson is entitled to a monthly base salary of $100,000 and was awarded stock options for a number of shares equal to $3 million divided by the January 31, 2022 stock price, subject to certain vesting provisions.

28.    **Defendant Scott Vogel** ("S. Vogel") was appointed to the Company's Board upon the consummation of the Merger.  Defendant S. Vogel is the brother of Jordan Vogel, who was Chairman and Co-CEO of PSAC prior to the Merger. Following the Special Committee's investigation and findings, Defendant S. Vogel became the Chair of the Audit Committee and the Nominating and Corporate Governance Committee of the Board.

29.    **Defendant Jiawei Wang** ("Wang") served as Legacy FF's Vice President of Global Capital Markets from May 2018 until the Merger and continued to lead the Capital Markets Department at the Company following the Merger.  In addition, Defendant Wang was a director of Legacy FF prior to the Merger.  Defendant Wang is the nephew of Defendant Jia.  On February 1, 2022, the Company announced that Defendant Wang was suspended without pay in connection with the Special Committee's investigation into inaccurate disclosures.

30.    **Defendant Qing Ye** ("Ye") joined Legacy FF in February 2018 and served as its Vice President of Business Development until the Merger.  Upon the consummation of the Merger, Defendant Ye became a Company director and continued serving as Vice President of Business

Development.

31.    Defendants Breitfeld, J. Vogel, Aydt, Goh, Krolicki, Liu, Swenson, Ye, and S. Vogel, are all current directors of Faraday and are referred to herein as "Current Director Defendants."

32.    Defendants Abush, Amsterdam, Feldman, Savar and J. Vogel are referred to herein as the "PSAC Defendants".

33.    Defendants Aydt, Breitfeld, Deng, Glasman, Jia, Krolicki, Wang, McBride, and Ye are collectively referred to herein as the "Legacy FF Defendants."

34.    The Current Director Defendants, the PSAC Defendants and the Legacy FF Defendants are collectively referred to herein as the "Individual Defendants."

## RELEVANT FACTS

**Background**

35.    Faraday Future claims it designs and engineers next-generation smart electric connected vehicles.

36.    PSAC was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.

37.    In late January 2021, PSAC and Legacy FF issued a press release announcing an agreement to consummate the Merger.  The terms of the agreement provided that a subsidiary of PSAC would merge with Legacy FF, the latter of which would survive the Merger as PSAC's wholly-owned subsidiary.

38.    The Relevant Period begins on January 28, 2021.  On that day, PSAC and Legacy FF issued a press release titled "Faraday Future to List on NASDAQ Through Merger With

Property Solutions Acquisition Corp.  With Estimated $1 Billion in Proceeds."  Therein, PSAC

and Legacy FF announced that PSAC and Legacy FF entered into a definitive agreement for a

business combination, and that following the closing, the combined company will be listed on the

NASDAQ:

> This transaction validates FF's vision to create a mobility ecosystem built upon
> innovations in technology and products.  FF's flagship product offering will be the
> FF 91, featuring industry leading 1,050 HP, 0-60 mph in less than 2.4 seconds, zero
> gravity seats with the largest 60-degree reclining   angles and a revolutionary user
> experience designed to create a mobile, connected, and luxurious third Internet
> living space.  FF  91 is targeted to launch within twelve months after closing of the
> merger.

> Commenting on today's significant   milestones, Faraday Future's Global Chief
> Executive Officer, Dr. Carsten Breitfeld said, "We are excited to enter into this
> partnership with PSAC. This is an important milestone in our company's
> transformation, one that we achieved with strong commitment from our employees,
> suppliers, and partners in the U.S. and China, as well as the city of Hanford,
> California. I am excited that this business combination will allow us to launch the
> class defining FF 91, building upon the founder's original vision to help our users
> and shareholders take part in shaping the future of mobility."

> "Faraday Future is a unique and differentiated electric vehicle company with
> significant   growth prospects for the future," said Property Solutions Co CEO and
> Chairman Jordan Vogel.  "We believe the excellent management team, led by Dr.
> Breitfeld, and industry-leading technology will allow Faraday  Future  to  reach
> its  true   growth potential."

> FF has invested over $2 billion dollars since its inception. In addition to the
> development of its first model FF 91, the product definition of the second model
> FF  81 has been completed, and the R&D work is progressing.

*          *          *

> **FF's B2C passenger vehicle launch pipeline over the next five years includes FF
> 91 series, FF  81 series, and FF 71 series.  FF 91 will define the FF brand DNA.
> This DNA will carry over to subsequent premium mass market vehicles in the
> portfolio – the FF 81, and FF 71. With such brand DNA, FF products are
> expected to be ahead of the competition in their respective segments in terms of
> their design, driving experience, interior comfort, connectivity, and user
> experience. FF 81 is expected to launch in 2023, and FF 71 in 2024. In addition**

*to passenger vehicles, FF plans to launch a Smart Last Mile Delivery ("SLMD") vehicle in 2023 leveraging its proprietary VPA.* To implement a capital light business model, FF has adopted a global hybrid manufacturing strategy consisting of its refurbished manufacturing facility in Hanford, California and collaboration with a leading contract manufacturing partner in South Korea. The company is exploring the possibility of additional manufacturing capacity in China through a joint venture. [Emphasis added].

39.     On March 19, 2021, the Company published the text of a Q&A session with IPO Edge. Therein, the Company stated:

FF has the most exciting growth opportunity ahead in the EV market. *The transaction is expected to fully fund the production of our flagship halo vehicle, the luxury electric FF 91, within 12 months of close.* The FF 91 is scheduled to launch in 2022, making our market disrupting product a relatively near-term reality. Our technology has been tested by the world's leading experts, who believe we have an edge that can transform the market with unparalleled performance. FF is led by a world-class management team with deep automotive, software, and internet experience.

*We have existing demand for the FF 91 by way of more than 14,000 reservations, and a strong strategy to scale in the US and China.* The strong signal we are seeing from China significantly expands the opportunity ahead for FF, evidenced by the fact that we have a Tier 1 city and a top three Chinese OEM participating in the PIPE financing. These strategic partners will help establish FF's presence in the Chinese market, further solidifying FF's unique US-China dual home market strategy. [Emphasis added].

40.     On April 5, 2021, PSAC filed its Registration Statement on Form S-4 in connection with the merger. In the Registration Statement, the Company stated:

FF intends to commercially launch FF 91 series within twelve months after closing of the Business Combination. Toward that goal, FF has completed most of the vehicle development milestones, including 29 prototype and 13  pre-production assets. FF  91 series is designed to compete with Maybach, Bentley Bentayga, Lamborghini Urus, Ferrari Purosangue, Mercedes S-Class, Porsche Taycan, BMW 7-Series etc.

*       *       *

FF has achieved major commercial milestones to bring its FF 91 model to the market. Unlike many competitors, FF has the advantage of speed to market as it is positioned to launch a production try-out in 9 months and commercial production of FF 91 series within 12 months after the Business Combination. FF has completed  29 prototypes and 13 pre-production assets and has completed most of

the vehicle development hurdles including feasibility, concept and development phases. As of the date hereof, 94% of the key components for FF 91 have been sourced, 91% production tooling is complete and 75% of production equipment is complete.

41.    As the world's only tech-luxury intelligent Internet electric vehicle brand, FF expects to sell more than 400,000 units cumulatively over the next five years, and ***its first flagship model, the FF 91, has received over 14,000 reservations***. [Emphasis added].

42.    On June 24, 2021, PSAC filed its Prospectus on Form 424(b)(3), soliciting stockholder approval of the merger with Legacy FF. Therein, the Company stated:

> FF has achieved major commercial milestones to bring its FF 91 model to the market. Unlike many competitors, ***FF has the advantage of speed to market as it is positioned to launch a production try-out in 9 months and commercial production of FF 91 series within 12 after the Business Combination***. [Emphasis added].

43.    On June 24, 2021, PSAC filed a document with the SEC consisting of a proxy statement, consent solicitation statement, and a prospectus (the "Proxy Statement"). In the Proxy Statement, the PSAC Board solicited the approval of PSAC stockholders for the Merger and Legacy FF's board of directors solicited the approval of Legacy FF shareholders for the Merger.

44.    The PSAC Defendants solicited the Proxy Statement which was filed pursuant to Section 14(a) of the Exchange Act, and the Proxy Statement contained material misstatements and omissions. The Proxy Statement also contained a Notice of Solicitation of Written Consents or Proxies from Legacy FF's board of directors to shareholders of Legacy FF.

45.    A forthcoming July 20, 2021 special meeting of stockholders was noted in the Proxy Statement. The Proxy Statement also specifically solicited PSAC stockholders to: (i) approve the Merger; (ii) approve amendments to PSAC's certificate of incorporation; (iii) elect nine directors to the post-Merger Board; (iv) approve, for purposes of complying with NASDAQ listing rules, the issuance of PSAC common stock to certain investors and institutional buyers in

private placements (the "NASDAQ Proposal"); and (v) approve Faraday's 2021 Stock Incentive Plan (the "2021 Plan").

46.     Legacy FF's "Competitive Strengths" were listed in the Proxy Statement as including: "Speed to market with the ability to launch commercial production within 12 months after the Business Combination."

47.     Following this statement emphasizing Legacy FF's production timeline, the Proxy Statement also stated:

> FF has achieved major commercial milestones to bring its FF 91 model to the market. Unlike many competitors, ***FF has the advantage of speed to market as it is positioned to launch a production try-out in 9 months and commercial production of FF 91 series within 12 months after the Business Combination.*** [Emphasis added].

48.     As to risk oversight functions to be handled by the post-Merger Board, the Proxy Statement stated:

> New FF's board of directors will oversee the risk management activities designed and implemented by management. New FF's board of directors will execute its oversight responsibility both directly and through its committees. New FF's board of directors will also consider specific risk topics, including risks associated with its strategic initiatives, business plans and capital structure. New FF's management, including its executive officers, is primarily responsible for managing the risks associated with the operation and business of the company and will provide appropriate updates to the board of directors and the audit committee. New FF's board of directors will delegate to the audit committee oversight of its risk management process, and its other committees will also consider risk as they perform their respective committee responsibilities. All committees will report to the board of directors as appropriate, including when a matter rises to the level of material or enterprise risk.

49.     As to the responsibilities of the post-Merger Company's Audit Committee of the Board, the Proxy Statement identified the members of the Audit Committee to be Defendants Swenson (as Chair), Goh, and S. Vogel.

50.     The Proxy Statement stated:

The purpose of the audit committee will be, among other things, to appoint, retain, set compensation of, and supervise New FF's independent registered public accounting firm, review the results and scope of the audit and other accounting related services and review New FF's accounting practices and systems of internal accounting and disclosure controls.

51.     The statements referenced above were false and misleading because, given Legacy FF's internal issues, which were undisclosed but about which the PSAC Defendants and the Legacy FF Defendants knew or should have known, it was not accurate to state that the post-Merger Board and Audit Committee would exercise risk oversight, review accounting practices, and review accounting and disclosure controls.

52.     As to the 2021 Plan, the Proxy Statement stated the following:

The 2021 Plan will be administered by the compensation committee of the New FF board of directors, or a subcommittee thereof, or such other committee designated by the New FF board of directors (the "Plan Committee"), in each case consisting of two or more members of the New FF board of directors. Each member of the Plan Committee is intended to be (i) a "non-employee director" within the meaning of Rule 16b-3 under the Exchange Act, and (ii) "independent" within the meaning of the rules of Nasdaq.

Subject to the express provisions of the 2021 Plan, the Plan Committee has the authority to select eligible persons to receive awards and determine all of the terms and conditions of each award. All awards are evidenced by an agreement containing such provisions not inconsistent with the 2021 Plan as the Plan Committee approves. The Plan Committee also has authority to establish rules and regulations for administering the 2021 Plan and to decide questions of interpretation or application of any provision of the 2021 Plan.

The Plan Committee may take any action such that (i) any outstanding options and SARs become exercisable in part or in full, (ii) all or any portion of a restriction period on any outstanding awards lapse, (iii) all or a portion of any performance period applicable to any awards lapse, and (iv) any performance measures applicable to any outstanding awards be deemed satisfied at the target, maximum or any other level.

The Plan Committee may delegate some or all of its power and authority under the 2021 Plan to the New FF board of directors, a subcommittee of the New FF board of directors, a member of the New FF board of directors, the Chief Executive Officer or other executive officer of New FF as the Plan Committee deems appropriate, except that it may not delegate its power and authority to a member of

the New FF board of directors, the Chief Executive Officer or any executive officer with regard to awards to persons subject to Section 16 of the Exchange Act.

53.     As to eligibility for the 2021 Plan, the Proxy Statement stated:

***Participants in the 2021 Plan will consist of such officers, other employees, non-employee directors, consultants, independent contractors and agents of New FF and its subsidiaries (and such persons who are expected to become any of the foregoing) as selected by the Plan Committee.*** The aggregate value of cash compensation and the grant date fair value of shares of common stock that may be awarded or granted during any fiscal year of New FF to any nonemployee director will not exceed $750,000. As of March 18, 2021, approximately 345 employees and 1 non-employee director are eligible to participate in the 2021 Plan if selected by the Plan Committee to participate. [Emphasis added].

54.     The Proxy Statement was materially misleading because it failed to disclose the following: (i) the PSAC Defendants were breaching their fiduciary duties to PSAC by failing to exercise risk oversight functions at PSAC and by causing or permitting PSAC to issue false and misleading statements; (ii) the post-Merger Board and Audit Committee would not adequately exercise these functions and would cause or permit the Company to issue false and misleading statements; and (iii) Defendant J. Vogel—a member of the PSAC Board who had breached his fiduciary duties—was improperly interested in increasing his compensation and the compensation of his brother S. Vogel by seeking shareholder approval of the 2021 Plan.

55.     The Proxy Statement also failed to disclose that: (i) Legacy FF was not as close to vehicle production as was claimed; (ii) certain of Legacy FF's assets in China had been frozen by courts; (iii) only several hundred of Legacy FF's 14,000 touted reservations were paid reservations, while others were merely unpaid indications of interest; (iv) a material number of Legacy FF's reservations for future vehicle deliveries were placed by a single customer which was not disclosed; (v) as a result of the foregoing, the post-Merger Company would be unable to file its quarterly report for the third quarter of 2021; and (vi) the Company failed to maintain internal controls.

56.     As a result of the false and misleading elements of the Proxy Statement, shareholders elected Defendants Aydt, Breitfeld, Krolicki, J. Vogel, and Ye to the Board, each one of which had breached their fiduciary duties to the Company or had aided and abetted such breaches.  Their election allowed them to breach their fiduciary duties to post- Merger Faraday. As a further result of the false and misleading elements of the Proxy Statement, shareholders elected Defendants Goh, Liu, Swenson, and S. Vogel to the Board, who then breached their fiduciary duties to the Company. Furthermore, as a result of the Proxy Statement's false and misleading elements, shareholders approved the Merger, approved amendments to PSAC's certificate of incorporation, approved the 2021 Plan, and approved the NASDAQ Proposal.

57.     The Merger was consummated on July 21, 2021 following the approval of the two companies' shareholders. The resulting entity—*i.e.*, the Company—changed its name to Faraday Future Intelligent Electric Inc.

58.     On September 19, 2021, the Company gave a business update at its "919 Futurist Day" event.  The business update included presentation materials that the Company attached to a Form 8-K filed with the SEC on September 20, 2021.  The Company stated as follows in the presentation materials:

> The transaction is expected to fully fund the production of class-defining performance luxury electric FF 91 within 12 months of transaction close. This transaction also supports the future development of the Company's unique I.A.I (Internet, Autonomous Driving, Intelligence) system.

59.     The presentation materials further stated: "Faraday Future's advanced manufacturing and factory operations teams have made significant progress with the support of our equipment suppliers in preparing the Hanford factory for the launch of the FF91."

60.     The statements referenced above were materially false and misleading because the Individual Defendants failed to disclose, *inter alia*, that: (i) Combined Faraday was not as close to

14

vehicle production as claimed; (ii) certain of Combined Faraday's assets in China had been frozen by courts; (iii) only several hundred of Combined Faraday's 14,000 touted reservations were paid reservations, while the others were merely unpaid indications of interest; (iv) a material number of Combined Faraday's reservations for future vehicle deliveries were attributable to a single affiliate that was undisclosed; (v) as a result of the foregoing, the Company would be unable to file its quarterly report for the third quarter of 2021; and (vi) the Company failed to maintain internal controls.

61.     During the Relevant Period, the Individual Defendants made false and misleading statements concerning the Company's business standing and prospects.  Specifically, the Individual Defendants touted or caused the Company or Legacy FF to tout the purported advantages of Legacy FF, the Merger, and Faraday's progress toward commercializing vehicles.

62.     The misrepresentations by the Individual Defendants had the effect of misleading investors and artificially inflating the price of the Company's stock throughout the Relevant Period.

63.     On October 7, 2021, the truth began to emerge.

64.     J Capital Research published a report titled "Move Over Lordstown: There's a New EV Scam in Town." Therein, J Capital Research alleged, among other things, that Faraday Future was unlikely to ever sell a car, noting that after eight years in business, the Company has "failed to deliver a car," "has reneged on promises to build factories in five localities in the U.S. and China," "is being sued by dozens of unpaid suppliers," and "has failed to disclose that assets in China have been frozen by courts."  Moreover, the report alleged that Faraday Future's claimed 14,000 deposits are fabricated because 78% of these reservations were made by a single undisclosed company that is likely an affiliate. The report further alleges that contrary to

representations of progress toward manufacturing made by Faraday Future in September 2021, former engineering executives did not believe that the car was ready for production by "Combined Faraday."[1]  J Capital Research summarized its findings:

> We don't think Faraday Future (FFIE), an EV SPAC, will ever sell a car. So far, it's nothing but a bucket to collect money from U.S. investors and pour it into the black hole of debt created by its founder, China's best-known securities fraudster, Jia Yueting.
>
> ***After eight years in business, FFIE has failed to deliver a car and is yet again saying "next year." The company has reneged on promises to build factories in five localities in the U.S. and China and repeatedly delayed the sixth. FFIE is being sued by dozens of unpaid suppliers and has failed to disclose that assets in China have been frozen by courts. And Jia appears to be running the company behind the scenes.***
>
> Given the current bubble environment, FFIE nevertheless managed to raise about $1 bln from U.S. investors via PIPEs and SPAC merger in July. Now it promises to restart its abandoned factory in Hanford, California and mass-produce cars in just seven months. We doubt that timeline will hold: three recent visits to the factory showed little activity, and company formers told us there are still engineering problems to work out.
>
> FFIE is the malformed lovechild of the imperiled Chinese real estate developer Evergrande (3333 HK) and Jia, China's fugitive default king. We expect Evergrande, which owns 20.5% of this company and stands to gain more equity, to sell off its shares as soon as the lockup period ends, in January 2022 if not, quietly, before that.
>
> ***In January 2021, the company claimed it had 14,000 reservations for the car—until one week after Hindenburg published its findings that Lordstown's orders were faked. Without explanation, after March 19, FFIE no longer made reference to the number of reservations. In fact, these reservations--78% of which were from a single company—had been converted in 2020 to a note payable earning 8% interest.*** The company strongly implies that the mystery booker, who was apparently ready to spend well over $1 bln on FFIE cars, may be an "affiliate." They fail to say who it was. In H1 2021, despite the upcoming SPAC merger, FFIE took in just $144,000 in new customer deposits.

* * *

---

[1]      The term "Combined Faraday" is sometimes used herein to refer collectively to the Company following the Merger and to Legacy FF as it existed prior to the Merger.

On September 20, 2021, the company issued a new presentation claiming progress toward manufacturing. ***But former engineering executives we interviewed did not believe that the car was ready for production.*** FFIE's contention that it needed just $90 mln to start mass production in seven months is "not even in the ballpark of true," said one formerly highly placed executive. Another former executive said, "The story with the SPAC is that they just needed money to manufacture, but I think there are still some critical engineering issues."

Chinese government reports show that in 2016, FFIE's subsidiary LeSee put $154 mln into the company's largest planned manufacturing site, in China's Zhejiang Province, but we visited the location and found nothing but an overgrown field. The area is so deserted that even the police station in what was intended to be the Faraday factory park has closed.

Jia Yueting, FFIE founder, has been banned for life from being associated with publicly listed companies in China. FFIE admits in its "risks" section that he has "illegally" provided funding and guarantees to affiliated companies, improperly diverted proceeds from the public offering of a company he controlled, and lied to Chinese regulators and investors. In Hong Kong, where he was chairman of the long-halted Coolpad Group Limited (2369 HK), he failed to disclose key transactions. Holding the title "Partner, Chief Product & User Ecosystem Officer," Jia still controls key spending decisions at FFIE through the FF Global Executive Committee. Because of him, FFIE's USD accounts in China have been frozen by regulators. In a lawsuit against FFIE, the company's former General Counsel Hong Liu claimed that a Jia "clique" controlled the company regardless of legal commitments.

Embarrassed by Jia, FFIE hired a "professional" CEO in September 2019, but his track record in Chinese EVs is not much better. Carsten Breitfeld was co-founder of Nanjing-based Byton, which owed suppliers and employees millions of dollars when it stopped operating in 2020. He conveniently omits from his bio in the prospectus his ill-fated tenure as CEO of another Chinese EV hopeful called Iconiq, which raised over ¥1.2 bln before going silent. He gets tepid reviews from formers.

In the current overheated EV environment, the company appears to be having difficulty finding talent In September, FFIE announced new executives: one from Lordstown—the company an FFIE former said "is setting new standards for fraud"—and two from Karma, a moribund company that the auto news site Jalopnik claims may have faked prototypes. One of the Karma graduates is an ex-vice president of A123 Systems, a formerly U.S.-listed Chinese company that has been sued multiple times for patent infringement and securities fraud. [Emphasis added].

65.     On this news, the price per share of the Company's common stock fell $0.35 from its closing price on October 6, 2021, or approximately 4.2%, to close at $8.05 per share on October 8, 2021.

66.     On November 2, 2021, Faraday Future announced that McBride was replacing Glasman as CFO. The Company claimed that "Mr. McBride succeeds Zvi Glasman, who resigned as CFO of the company to pursue other opportunities" and that "Mr. Glasman's departure from the Company is not a result of any disagreement with the Company's independent auditors or any member of management on any matter of accounting principles or practices, financial statement disclosure, or internal controls."

67.     The truth fully emerged on November 15, 2021, when the Company announced that it was unable to timely file its quarterly report on Form 10-Q for the fiscal period ended September 30, 2021.   The Company also announced that its Board had formed a special committee of independent directors (the "Special Committee") to "review allegations of inaccurate disclosures."

68.     On this news, the price per share of the Company's common stock fell $0.28 from its closing price on November 15, 2021, or approximately 3%, to close at $8.83 per share on November 16, 2021.

69.     On February 1, 2022, the Company issued a press release announcing the conclusion of the Special Committee's investigation and the resulting findings.

70.     The Special Committee found that: (i) statements describing Defendant Jia's role at the Company that were made in connection with the Merger were "inaccurate"; (ii) statements regarding 14,000 reservations for the FF 91 were "potentially misleading" because mere hundreds of the reservations were paid reservations, while other reservations were unpaid indications of interest; (iii) the Company's internal controls over financial accounting and reporting needed an

upgrade in terms of personnel and systems; and (iv) the corporate culture at the Company failed to sufficiently prioritize compliance. Based on these findings, the Special Committee recommended a number of enhancements to the Company's corporate governance and oversight.

71.     The press release first stated that "the Special Committee found that statements made by certain Company employees to certain investors describing Mr. Jia's role within the Company were inaccurate," and that Defendant Jia's involvement in the post-Merger Company "was more significant than what had been represented to certain investors."

72.     The Special Committee's second finding was that statements to the effect that Combined Faraday "had received more than 14,000 reservations for the FF 91 vehicle were potentially misleading because only several hundred of those reservations were paid, while the others (totaling 14,000) were unpaid indications of interest."

73.     The Special Committee also found that, "[c]onsistent with the Company's previous public disclosures regarding identified material weaknesses in its internal controls, the Company's internal controls over financial accounting and reporting require an upgrade in personnel and systems."

74.     Lastly, the Special Committee found that "[t]he Company's corporate culture failed to sufficiently prioritize compliance."

75.     The Board of Faraday instituted a number of corporate reforms in response to findings of the Special Committee, including: (i) Defendant Swenson was appointed to the new position of Executive Chairperson; (ii) Defendants Breitfeld and Jia began reporting directly to Defendant Swenson and would each receive 25% salary reductions; (iii) Defendant J. Vogel became Lead Independent Director; (iv) Defendant Krolicki stepped down from his service as Board Chairman; (v) Defendant S. Vogel became Chair of the Audit Committee and the

Nominating and Corporate Governance Committee; (vi) Jarret Johnson, Vice President, General Counsel and Secretary, will be separating from the Company; and (vii) Defendant Wang was suspended without pay until further notice.

76.     On November 15, 2021, Faraday Future issued a press release entitled "Faraday Future Provides Business Update."   Therein, Faraday Future announced that it would be unable to file its Form 10-Q for the fiscal quarter ended September 30, 2021 on time. Faraday Future further announced that its board of directors "formed a special committee of independent directors to review allegations of inaccurate disclosures," including the claims in the J Capital report.

77.     In greater part, the Company disclosed:

Faraday Future Intelligent Electric Inc. ("Faraday Future" or the "Company") (NASDAQ: FFIE), a California-based global shared intelligent electric mobility ecosystem company, filed a Form 12b-25 notifying the SEC that it is unable to file its Form 10-Q for the fiscal quarter ended September 30, 2021 within the prescribed time period, and does not expect to file it by the extended filing date pursuant to Rule 12b-25. The Company is also unable to file its amended Registration Statement on Form S-1 (File No. 333-258993) (the "Form S-1/A") at this time.

The Company's Board of Directors formed a special committee of independent directors to review allegations of inaccurate disclosures, including claims made in a report issued by an investor with a history of seeking to drive down public companies' stock prices for its own benefit. Faraday Future seeks to do business in the most ethical and transparent way. As a new public company, the Board, as part of its review, is seeking to ensure that the Company is adhering to the highest standards of conduct.

The special committee's review is ongoing, and it is working diligently with independent counsel and advisors to complete its review as soon as possible. The Company is committed to working with the special committee to complete its work in order to re-establish timely financial reporting as soon as feasible. Until the review is complete, the Company is not able to file its Form 10-Q or Form S-1/A.

78.     On this news, the Company's share price fell $0.28 per share, or approximately 3%, to close at $8.83 per share on November 16, 2021.

**THE COMPANY'S CORPORATE GOVERNANCE**

79.     As members of the Board, the Current Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

80.     The conduct of the Current Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Faraday, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Individual Defendants were aware posed a risk of serious injury to the Company.

**DUTIES OF THE CURRENT DIRECTOR DIRECTORS**

81.     By reason of their positions as officers, directors, and/or fiduciaries of Faraday and because of their ability to control the business and corporate affairs of Faraday, the Current Director Defendants owed the Company and its shareholders the fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Faraday in a fair, just, honest, and equitable manner.  The Current Director Defendants were and are required to act in furtherance of the best interests of Faraday and its shareholders.

82.     Each director and officer of the Company owes to Faraday and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Current Director Defendants had a duty to promptly disseminate accurate and truthful

information regarding the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

83.     The Current Director Defendants, because of their positions of control and authority as directors and/or officers of Faraday, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.   Because of their advisory, executive, managerial and directorial positions with Faraday, each of these Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of Faraday.

84.     To discharge their duties, the officers and Current Director Defendants of Faraday were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.   By virtue of such duties, the officers and Current Director Defendants of Faraday were required to, among other things:

> Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

> Conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

> Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

> Remain informed as to how Faraday conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and

state securities laws;

Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

Ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

85.     Each Current Director Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Current Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Faraday, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Current Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

86.     The Current Director Defendants breached their duties of loyalty and good faith by causing the Company to misrepresent the information as detailed *infra*.  The Current Director Defendants subjected the Company to the costs of defending, and the potential liability from, the securities class action.  As a result, Faraday has expended, and will continue to expend, significant sums of money.

87.     The Current Director Defendants' actions have irreparably damaged Faraday's corporate image and goodwill.

## **AUDIT COMMITTEE**

88.     The purpose of the Audit Committee is to prepare the Audit Committee Report required by the SEC to be included in the Company's Proxy Statement and to assist the Board in

overseeing and monitoring: (i) the quality and integrity of the Company's financial statements; (ii) the Company's compliance with legal and regulatory requirements; (iii) the Company's independent registered public accounting firm's qualifications and independence; (iv) the performance of the Company's internal audit function; and (v) the performance of the Company's independent registered public accounting firm.

89.     The Current Director Defendants on the Audit Committee failed to satisfy their aforesaid duties.

## COMPENSATION OF CERTAIN DEFENDANTS

90.     According to the Proxy Statement, Defendant Breitfeld's base salary increased to $2.25 million in connection with the Merger, although he received a salary reduction of 25% in connection with the Special Committee's investigation.  Defendant Breitfeld's also has received a lump sum bonus equal to the amount by which his base salary was reduced (to $1.8 million) from September 2019 until the Merger.  In addition, he receives corporate housing or a monthly housing allowance, an option to purchase 13 million shares of Company stock, and a signing and retention bonus of $1.2 million, which vested in part in August 2020 and August 2021 and which will fully vest in August 2022.  Defendant Breitfeld is a manager of FF Global Partners LLC ("FF Global"), which, as of the date of the Proxy Statement, controlled Pacific Technology Holding LLC ("Pacific") and thereby held 29.1% of Legacy FF's share capital.  Pacific indirectly controls FF Top Holding LLC f/k/a FF Top Holding Ltd. ("FF Top"), which held 121,438,964 shares of the Company's common stock as of July 21, 2021, or approximately 37.4%.

91.     Defendant Glassman remained employed as a senior advisor to the Company through December 31, 2021 and agreed to provide consulting services to the Company as an independent contractor until February 15, 2022.  According to the Proxy Statement, Defendant

Glasman's annual base salary increased from $320,000 to $600,000 effective April 1, 2021, with a $70,000 true-up payment.  Furthermore, he received a transaction bonus of $400,000 upon the consummation of the Merger.

92.     According to the Company's Form 8-K filed on November 2, 2021, which announced Defendant McBride's appointment to the position of CFO, Defendant McBride's annual base salary is $330,000, and he is eligible for a discretionary annual performance bonus of up to $170,000.  Additionally, Defendant McBride received restricted stock unit awards with an aggregate grant date fair value of $2.5 million, granted in $500,000 annual increments.

93.     According to the Proxy Statement, Defendant J. Vogel receives annual cash retainers of $50,000 for his service as a director, $6,250 for his service on the Compensation Committee, and an annual restricted stock unit award of $150,000. In connection with this appointment to the position of Lead Independent Director, Defendant J. Vogel became entitled to an additional $27,500 annual retainer.

94.     In connection with the Special Committee's investigation and findings, Defendant Jia now reports directly to Defendant Swenson.  Defendant Jia is also a manager of FF Global, which, as of the date of the Proxy Statement, controlled Pacific and thereby held 29.1% of Legacy FF's share capital. Pacific indirectly controls FF Top, which held 121,438,964 shares of the Company's common stock as of July 21, 2021, or approximately 37.4%.

95.     According to the Proxy Statement, Defendant Aydt's base salary is $400,000 and he is eligible to receive a discretionary annual performance bonus (with a target amount of $100,000). Defendant Aydt is a manager of FF Global, which, as of the date of the Proxy Statement, controlled Pacific and thereby held 29.1% of Legacy FF's share capital. Pacific indirectly controls FF Top, which held 121,438,964 shares of the Company's common stock as of

July 21, 2021, or approximately 37.4%.  As of the date of the Proxy Statement, Defendant Aydt held 7,332,000 membership units in FF Global.

96.     Defendant Deng previously served as Legacy FF's Vice President of Administration from April 2014 until the Merger and was also a member of Legacy FF's board of directors.  Defendant Deng is a manager of FF Global, which, as of the date of the Proxy Statement, controlled Pacific and thereby held 29.1% of Legacy FF's share capital. Pacific indirectly controls FF Top, which held 121,438,964 shares of the Company's common stock as of July 21, 2021, or approximately 37.4%.

97.     According to the Proxy Statement, Defendant Goh receives annual cash retainers of $50,000 for his service on the Board, $7,500 for his service as Chair of the Finance & Investments Committee, and $10,000 for his service as a member of the Audit Committee, in addition to an annual restricted stock unit award of $150,000.

98.     According to the Proxy Statement, Defendant Krolicki receives annual cash retainers for $50,000 for his service on the Board, $10,000 for his service as a member of the Audit Committee, and $6,250 for his service as a member of the Compensation Committee, in addition to a $150,000 annual restricted stock unit award.

99.     According to the Proxy Statement, Defendant Liu receives annual cash retainers of $50,000 for his service on the Board, $10,000 for his service as Chair of the Compensation Committee, and $6,250 for his service as a member of the Compensation Committee, in addition to an annual restricted stock unit award of $150,000.

100.    According to the Proxy Statement, Defendant S. Vogel receives an annual cash retainer of $50,000 for his service on the Board, in addition to an annual restricted stock unit award of $150,000. As Chair of the Audit Committee and Nominating and Corporate Governance

Committee, he is entitled to annual cash premiums of $15,000 and $7,500, respectively.

101.    As of March 1, 2020—prior to his suspension without pay—Defendant Wang's annual base salary increased to $380,000, according to the Proxy Statement.  Defendant Wang is a manager of FF Global, which, as of the date of the Proxy Statement, controlled Pacific and thereby held 29.1% of Legacy FF's share capital.  Pacific indirectly controls FF Top, which held 121,438,964 shares of the Company's common stock as of July 21, 2021, or approximately 37.4%.

102.    According to the Proxy Statement, Defendant Ye's base salary is $300,000 and he is eligible to receive a discretionary annual performance bonus (with a target of $100,000). As of the date of the Proxy Statement, Defendant Ye held 3,632,700 membership units in FF Global.  As of the date of the Proxy Statement, FF Global controlled Pacific and thereby held 29.1% of Legacy FF's share capital. Pacific indirectly controls FF Top, which held 121,438,964 shares of the Company's common stock as of July 21, 2021, or approximately 37.4%.

## MISCONDUCT OF DEFENDANTS

103.    The Individual Defendants breached their fiduciary duties during the Relevant Period by making and/or causing the Company to make a series of materially false and misleading statements regarding the Combined Faraday's business, operations, and prospects. Such false and misleading statements were made willfully or recklessly.  Specifically, the Individual Defendants made and/or caused the Company to make false and misleading statements that failed to disclose, *inter alia*, that: (i) Combined Faraday was not as close to vehicle production as claimed; (ii) certain of Combined Faraday's assets in China had been frozen by courts; (iii) only several hundred of Combined Faraday's 14,000 touted reservations were paid reservations, while others were merely unpaid indications of interest; (iv) a material number of Combined Faraday's reservations for future vehicle deliveries were attributable to a single affiliate that was undisclosed; (v) as a result

of the foregoing, the Company would be unable to file its quarterly report for the third quarter of 2021; and (vi) the Company failed to maintain internal controls.  As a result of the foregoing, the Company's and Legacy FF's public statements were materially false and misleading at all relevant times.

104.    In further breach of their fiduciary duties to the Company, the Individual Defendants failed to correct and/or caused the Company to fail to correct these false and misleading statements and omissions of material fact.  As a result, the Individual Defendants are personally liable to the Company for breaching their fiduciary duties.

105.    The PSAC Defendants breached their fiduciary duties by causing the Company to acquire Legacy FF in the Merger, despite that: (i) Legacy FF was not as close to vehicle production as claimed; (ii) certain of Legacy Faraday's assets in China had been frozen by courts; (iii) only several hundred of Legacy FF's 14,000 touted reservations were paid reservations, while others were merely unpaid indications of interest; and (iv) a material number of Legacy FF's reservations for future vehicle deliveries were attributable to an affiliate that was undisclosed. The PSAC Defendants knew or should have known of these issues. Nonetheless, they breached their fiduciary duties by causing PSAC to acquire Legacy FF on terms that, in light of the issues with Legacy FF, were unfavorable to PSAC and PSAC shareholders (the "Overpayment Misconduct").

106.    In breach of their fiduciary duties to the Company, the PSAC Defendants failed to timely file PSAC's quarterly report for the quarter ended March 31, 2021.  In addition, Defendant McBride and the current members of the Company's Board breached their fiduciary duties to the Company by failing to timely file the Company's quarterly report for the third quarter of 2021.

107.    In further breach of their fiduciary duties, the Individual Defendants willfully or recklessly caused Faraday to fail to maintain adequate internal controls.   Specifically, the

Company's Form 10-Q filed on August 13, 2021 states that, "[d]ue solely to the events that led to the Company's restatement of its December 31, 2020 financial statements on May 27, 2021, ***management has identified a material weakness in internal controls*** related to the accounting for our Private Warrants." (Emphasis added).

108.    The PSAC Defendants' breaches of fiduciary duty were aided and abetted by the Legacy FF Defendants.

109.    The Individual Defendants' misconduct has subjected the Company, its CEO, a former CFO, a second former CFO, the founder of Combined Faraday, and the Company's two former Co-CEOs to a securities fraud class action lawsuit pending in the United States District Court for the Central District of California (the "Securities Class Action").

110.    Furthermore, the Individual Defendants' misconduct has subjected the Company to the need to undertake internal investigations, the need to implement adequate internal controls, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein. As a result of the foregoing, the Company will have to expend many millions of dollars.   The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

111.    In light of the breaches of fiduciary duty engaged in by the Individual Defendants, half of whom are the Company's current directors, of the collective engagement in fraud and misconduct by the Company's directors, of the substantial likelihood of the directors' liability in this derivative action, of the substantial likelihood of Defendant Breitfeld's and Defendant J. Vogel's liability in the Securities Class Action, of their not being disinterested and/or independent

directors, a majority of the Company's Board cannot consider a demand to commence litigation against themselves on behalf of Faraday with the requisite level of disinterestedness and independence.

## DAMAGES TO THE COMPANY

112.    Faraday has lost and will continue to lose and expend many millions of dollars as a direct and proximate result of the Individual Defendants' misconduct.

113.    These losses include, but are not limited to, fees associated with the Securities Class Action filed against the Company and six of the Individual Defendants, as well as any internal investigations, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

114.    These losses also include, in light of the poor state of affairs at Legacy FF described herein, the amount PSAC overpaid for Legacy FF.

115.    These losses also include payments the Individual Defendants received under the 2021 Plan, which was approved by shareholders at least in part due to false and misleading statements that the Individual Defendants issued or caused to be issued.

116.    These losses further include expenses related to the Company's failure to timely file reports with the SEC and to maintain internal controls.

117.    Additionally, these losses include compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

118.    Faraday has also suffered and will continue to suffer a loss of reputation and goodwill as a direct and proximate result of the Individual Defendants' conduct, as well as a "liar's discount" that will plague Faraday's stock in the future due to the Company's and the Individual

Defendants' misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

119.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of Defendants' violations of the law, and their breaches of fiduciary duties and other wrongful conduct as alleged herein and that occurred during the Relevant Period.

120.    Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

121.    Plaintiff is a current owner of the Company stock and has been an owner of Company stock during the Relevant Period.  Plaintiff understands his obligation to hold stock throughout the duration of this action and are prepared to do so.

122.    Because of the facts set forth herein, Plaintiff has not made a demand on the Board of the Company to institute this action against the Current Director Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

123.    At the time this suit was filed, the Board was comprised of nine (9) members, the Current Director Defendants.  Thus, Plaintiff is required to show that a majority of the Current Director Defendants, *i.e.*, five (5), could not exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

124.    The Current Director Defendants face a substantial likelihood of liability in this action because they caused the Company to issue false and misleading statements concerning the

information described herein.  Because of their advisory, executive, managerial, and directorial positions with the Company, the Current Director Defendants had knowledge of material non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

125.    The Current Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

126.    The Current Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this Complaint, Plaintiff did not make (and was excused from making) a pre-filing demand on the Board to initiate this action because making a demand would have been a futile and useless act.

127.    Each of the Current Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

128.    Each of the Current Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

129.     Additionally, each of the Current Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

**Defendant Breitfeld**

130.     Defendant Breitfeld served as CEO and a director of Legacy FF prior to the Merger and held those positions post-Merger.   The Company also admits that he is a non-independent director.   As CEO of the Company following the Merger, Defendant Breitfeld was responsible for the false and misleading statements and omissions.   In addition, Defendant Breitfeld was CEO of Legacy FF, and was responsible for the false and misleading statements and omissions made by Legacy FF when the Legacy FF Defendants were aiding and abetting the PSAC Defendants' breaches of fiduciary duty.

131.     As CEO, the Company provides Defendant Breitfeld with significant compensation, including a base salary that reached at least $2.25 million prior to the outcome of the Special Committee's investigation.   Therefore, Defendant Breitfeld cannot disinterestedly consider a demand to sue the directors that control his continued employment. Moreover, Defendant Breitfeld is named as a defendant in the Securities Class Action.

**Defendant Aydt**

132.     Defendant Aydt served as Legacy FF's Senior Vice President of Business Development and Product Definition from November 2019 until the Merger and has continued to serve in that role following the Merger.   Defendant Aydt served as a director of Legacy FF prior to the Merger, and Defendant Aydt joined the Board upon the consummation of the Merger.   The Company admits that he is a non-independent director.

133.    The Company also provides Defendant Aydt with his principal occupation, which he receives significant compensation, including a base salary of $400,000.  Therefore, Defendant Aydt cannot disinterestedly consider a demand to sue the directors that control his continued employment.

**Defendant Krolicki**

134.    Defendant Krolicki served on Legacy FF's board prior to the Merger and was appointed to the Board of the Company upon the consummation of the Merger.  Defendant Krolicki serves as Chairman of the Board and as Chair of the Nominating and Corporate Governance Committee.  Defendant Krolicki is entitled to significant compensation for his role at the Company.

**Defendant Liu**

135.    Defendant Liu has served as a member of the Board since the Merger.  Defendant Liu serves as Chair of the Compensation Committee and as a member of the Nominating and Corporate Governance Committee.  Defendant Liu receives significant compensation from the Company for his service on the Board.

**Defendant Swenson**

136.    Defendant Swenson served as a member of the Board, as Chair of the Audit Committee, and as a member of the Compensation Committee following the Merger and is currently Executive Chairperson of the Company.  Defendant Swenson receives significant compensation from the Company for her service as Executive Chairperson.

**Defendant J. Vogel**

137.    Defendant J. Vogel served as PSAC's Chairman and Co-CEO from its inception until the Merger, when he joined the Board.  Defendant J. Vogel is a member of the Compensation

Committee.  In addition, Defendant J. Vogel is a managing member of Sponsor.  Defendant J. Vogel is the brother of Defendant S. Vogel.

**Defendant S. Vogel**

138.    Defendant S. Vogel has served as a member of the Board since the Merger and is the brother of Defendant J. Vogel.  Defendant S. Vogel receives significant compensation from the Company for his service on the Board.

**Defendant Ye**

139.    Defendant Ye joined Legacy FF in February 2018 and served as its Vice President of Business Development until the Merger.  Following the Merger, Defendant Ye became a member of the Board and continued serving as Vice President of Business Development. Defendant Ye is entitled to significant compensation for his role at the Company, including a base salary of $300,000.

**Additional Reasons Demand Is Futile**

140.    The Company announced on November 15, 2021 that it was creating the Special Committee to investigate allegations of inaccurate disclosures.  On February 1, 2022, the Special Committee announced that the Company suspended (without pay) Defendant Wang and announced the separation of Jarret Johnson from the Company.  The remedial actions approved by the Board did not include litigation against any of the parties herein to recover the harm suffered by the Company.  The Board was presented with the Special Committee's findings but failed to initiate litigation to recover on the Company's behalf.

141.    The Directors have longstanding business, personal, and familial relationships with each other that preclude them from acting independently and in the best interests of the Company

and the shareholders.  Defendants J. Vogel and S. Vogel are brothers, making it exceedingly unlikely that they would initiate an investigation into the misconduct of the other.

142.    Certain of the Directors are also connected through or beholden to FF Global, which exerts influence over the Company's management through FF Global's issuance of equity interests as additional compensation to Company management.

143.    Defendants Goh, Swenson, and S. Vogel served as members of the Audit Committee upon the consummation of the Merger, with Defendant Swenson serving as Chair. Defendants Goh, Swenson, and S. Vogel are responsible for overseeing, among other things, the quality and integrity of the Company's financial statements, the Company's legal and regulatory compliance, the Company's system of internal controls.  Defendants Goh, Swenson, and S. Vogel failed to ensure the integrity of the Company's financial statements and internal controls and failed to ensure compliance with laws and regulations as they are charged to do. Defendants Goh, Swenson, and S. Vogel failure to ensure that adequate internal controls were in place caused the Company to issue false and misleading financial statements to investors, and to fail to timely file a quarterly report with the SEC.

## **COUNT I**

### **Against the PSAC Defendants for Violations of Section 14(a) of the Exchange Act**

144.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

145.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public

interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

146.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

147.    Under the direction and watch of the PSAC Defendants, the Proxy Statement failed to disclose: (i) the PSAC Defendants were breaching their fiduciary duties to PSAC by failing to exercise risk oversight functions at PSAC and by causing or permitting PSAC to issue false and misleading statements; (ii) the post-Merger Board and Audit Committee would not adequately exercise these functions and would cause or permit the Company to issue false and misleading statements, as discussed above; and (iii) Defendant J. Vogel—a member of the PSAC Board who had breached his fiduciary duties—was improperly interested in increasing his compensation and the compensation of his brother S. Vogel by seeking shareholder approval of the 2021 Plan.

148.    The Proxy Statement also failed to disclose that: (i) Legacy FF was not as close to vehicle production as claimed; (ii) certain of Legacy FF's assets in China had been frozen by courts; (iii) only several hundred of Legacy FF's 14,000 touted reservations were paid reservations, while others were merely unpaid indications of interest; (iv) a material number of Legacy FF's reservations for future vehicle deliveries were attributable to a single affiliate that was undisclosed; (v) as a result of the foregoing, the post-Merger Company would be unable to file its quarterly

report for the third quarter of 2021; and (vi) the Company failed to maintain internal controls. As a result, the Proxy Statement was materially false and misleading.

149.    The PSAC Defendants should have known in the exercise of reasonable care that by misrepresenting or failing to disclose the foregoing material facts, the statements in the Proxy Statement were materially false and misleading.  These misrepresentations and omissions were material to Plaintiff in voting on the matters set forth in the Proxy Statement for shareholder determination, including but not limited to, the election of Directors, the 2021 Plan, the NASDAQ Proposal, and amendments to the Company's certificate of incorporation.

150.    As a result of the Proxy Statements false and misleading elements, Company shareholders elected Defendants Aydt, Breitfeld, Krolicki, J. Vogel, and Ye to the Board, allowing them to continue breaching their fiduciary duties to Faraday or aiding and abetting such breaches, and elected Defendants Goh, Liu, Swenson, and S. Vogel to the Board, who breached their fiduciary duties to the Company following the Merger. As a further result of the Proxy Statements false and misleading elements, shareholders approved: (i) the Merger; (ii) amendments to PSAC's amended and restated certificate of incorporation; (iii) the 2021 Plan; and (iv) the NASDAQ Proposal.

151.    The Company was damaged as a result of the PSAC Defendants' material misrepresentations and omissions in the Proxy Statement.

152.    Plaintiff, on behalf of Faraday, has no adequate remedy at law.

## COUNT II

### (Against the Legacy (FF) Defendants
for Aiding and Abetting Breach of Fiduciary Duty)

153.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

154.    The Legacy FF Defendants aided and abetted the PSAC Defendants who breached their fiduciary duties to the Company.

155.    The Legacy FF Defendants' misconduct resulted in continuous, connected, and ongoing harm to the Company.

156.    Specifically, the Legacy FF Defendants promoted the Merger by issuing false and misleading statements concerning Legacy FF's products, operations and business prospects. Moreover, the Legacy FF Defendants controlled and operated Legacy FF, the Company's operational predecessor, and caused Legacy FF to jointly issue press releases and SEC filings which contained materially false and misleading statements promoting the Company's future operations and prospects.

157.    The Legacy FF Defendants are jointly and severally liable to the same extent as the PSAC Defendants are liable for breaches of fiduciary duty as set forth herein or violations of any other laws.

158.    As a direct and proximate result of the Legacy FF Defendants' aiding and abetting of the PSAC Defendants' breaches of duty alleged herein, Faraday has sustained and will continue to sustain substantial damages.

159.    Plaintiff on behalf of Faraday has no adequate remedy at law.

**COUNT III**

**(Against Defendants Carsten Breitfeld, Zvi Glasman, Walter J. McBride, Jordan Vogel, Aaron Feldman, And Yueting Jia for Violations of Sections 10(b) and 21D Of The Exchange Act)**

160.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

161.    The Company, along with Defendants Carsten Breitfeld, Zvi Glasman, Walter J. McBride, Jordan Vogel, Aaron Feldman and Yueting Jia are named as defendants in the Securities Class Action, which assert claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder.  If and when the Company is found liable in the Securities Class Action for these violations of law, the Company's liability will be in whole or in part due to Defendants Breitfeld, Glasman, McBride, Vogel, Feldman and Jia's willful and/or reckless violations of their obligations as officers and directors of the Company.

162.    Through their positions of control and authority as officers of the Company, Defendants Breitfeld, Glasman, McBride, Vogel, Feldman and Jia were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts described in the Securities Class Actions and herein.

## COUNT IV

### (Against the Current Director Defendants for Breach of Fiduciary Duty)

163.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

164.    The Current Director Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, the Current Director Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

165.    The Current Director Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

166.    The Current Director Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Current Director Defendants

breached their fiduciary duties of loyalty and good faith by allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

167.    As a direct and proximate result of the Director Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.  As a result of the misconduct alleged herein, the Current Director Defendants are liable to the Company.

168.    As a direct and proximate result of the Current Director Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending and/or settling securities lawsuits and governmental investigations, severe damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT V

### (Against the Current Director Defendants for Waste of Corporate Assets)

169.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

170.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

171.    As a result of the misconduct described above, the Current Director Defendants wasted corporate assets by, *inter alia*: (a) paying excessive compensation, bonuses, and

termination payments to certain of its executive officers; (b) awarding self-interested stock options to certain officers and directors; and (c) incurring potentially millions of dollars of legal liability and/or legal costs to defend and/or settle actions addressing Defendants' unlawful actions.

172.   As a result of the waste of corporate assets, the Current Director Defendants are liable to the Company.

173.   Plaintiff, on behalf of the Company, has no adequate remedy at law.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Declaring that Plaintiff may maintain this action on behalf of the Company and that Plaintiff is an adequate representative of the Company;

B.     Finding the Current Director Defendants liable for breaching their fiduciary duties owed to the Company and for committing corporate waste;

C.     Directing the Current Director Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the rampant wrongful conduct described herein;

D.     Finding the PSAC Defendants for violations of Section 14(a) of the Exchange Act;

E.     Finding the Legacy FF Directors liable for aiding and abetting the PSAC Defendants' violations of Section 14(a) of the Exchange Act.

F.     Finding Defendants Breitfeld, Glasman, McBride, J. Vogel, Feldman and Jia liable for violations of Sections 10(b) and 21D of the Exchange Act.

G.     Awarding damages to the Company for the harm the Company suffered as a result of the Defendants' wrongful conduct.

H.     Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

I.     Awarding such other and further relief as is just and equitable.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 11, 2022

**BIELLI & KLAUDER, LLC**

*/s/ Ryan M. Ernst*
Ryan M. Ernst (No. 4788)
1204 N. King Street
Wilmington, DE 19801
Telephone: (302) 803-4600
Email: rernst@bk-legal.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: egleston@gme-law.com

*Attorneys for Plaintiff*